IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 24-cv-00132-PAB-KAS

JONATHAN SANDERS, in his capacity as legal guardian of J.S., and
SHELL T. BLANSCET, in his capacity as legal guardian of C.G.,

    Plaintiffs,

v.

LAURA MYERS,
ANTHONY VRUGGINK, and
LEGACY ACADEMY, a Colorado nonprofit corporation,

    Defendants.

---

# ORDER

---

This matter is before the Court on the Motion to Dismiss Plaintiffs' First Amended Complaint [Docket No. 49] filed by defendants Laura Myers, Anthony Vruggink, and Legacy Academy ("Legacy") (collectively, the "defendants") to dismiss plaintiffs' breach of contract and Section 1983 claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  Docket No. 49.

Jonathan Sanders, on behalf of his minor child J.S., and Shell Blanscet, on behalf of his minor child, C.G. (collectively, the "plaintiffs"), filed a response.  Docket No. 55.  Defendants filed a reply.  Docket No. 56.  The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

## I. BACKGROUND[1]

In February 2023, J.S. and C.G. were students in the 8th grade at Legacy Academy. Docket No. 41 at 11, ¶ 40. Legacy Academy is a charter school in Elizabeth, Colorado, operating under the auspices of the Elizabeth School District (the "District"). *Id.* at 3-4, ¶¶ 8-9, 14. Defendant Laura Myers was the dean of students at Legacy, while Anthony Vruggink was the vice principal. *Id.* at 1-3, ¶¶ 1, 7. That February, a female classmate attended school wearing a dress that was shorter than required by Legacy's dress code. *Id.* at 11, ¶ 45. The student had a "crush" on C.G. and "knowingly and intentionally bent over in front of C.G., exposing her buttocks to C.G." *Id.* at 12, ¶¶ 47-48. Upon seeing this, C.G. told J.S. to avert his eyes and to instead look at the head of another student in the class. *Id.*, ¶ 49. J.S. chuckled in response to this statement and looked away. *Id.*, ¶ 51. Ms. Myers investigated the incident by interviewing C.G. and J.S., separately, in her office. *Id.* at 13-14, ¶¶ 56, 61-63, 68-69.[2] During those interviews, both students discussed their classmate's indecent exposure. *Id.* After his conversation with Ms. Myers, J.S. spent time in Mr. Vruggink's office. *Id.* at 14-15, ¶ 70. At some point, Ms. Myers alleged that the actions of J.S. and C.G. constituted sexual harassment. *Id.* at 11, ¶ 41.

---

[1] The facts below are taken from plaintiffs' amended complaint, Docket No. 41, and are presumed to be true, unless otherwise noted, for purposes of ruling on defendants' motion to dismiss. *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

[2] It is not clear from the first amended complaint whether it was Ms. Myers and Mr. Vruggink or Ms. Thorn who conducted the first investigation. While the complaint mentions Ms. Thorn's investigation first, Docket No. 41 at 11, ¶ 43, it later seems to imply that Ms. Thorn conducted her investigation after discovering Ms. Myers' and Mr. Vruggink's investigation. *Id.* at 15, ¶¶ 75-77. Ultimately, the distinction is immaterial for the purposes of the Court's analysis.

Legacy principal Tambralla Thorn became aware of the matter. *Id.* at 15, ¶ 75. Ms. Thorn investigated and determined that J.S. and C.G. had not sexually harassed their classmate. *Id.* at 15-16, ¶¶ 77-82. Further, Ms. Thorn concluded that Ms. Myers and Mr. Vruggink treated J.S. unfairly by isolating him in a room and restricting his ability to call his parents. *Id.* at 15, ¶ 75. Ms. Thorn apologized to J.S.'s parents for the actions of the other administrators and told them that J.S. would not be suspended. *Id.*, ¶ 76. Ms. Thorn informed Ms. Myers, Mr. Vruggink, and four members of Legacy's board of directors of her conclusions. *Id.* at 17, ¶ 89. Shortly thereafter, Ms. Thorn was terminated for failing to suspend J.S. and C.G. for the alleged sexual harassment incident. *Id.* at 20, ¶ 105. Mr. Vruggink became the interim principal. *Id.*, ¶ 106. Legacy punished J.S. and C.G. by suspending J.S. for two days and assigning C.G. "restorative lunch lessons and a daily behavior plan." *Id.*[3]

At no time did defendants report the sexual harassment allegations to the District. *Id.*, ¶ 108. Nor did defendants provide J.S., C.G., or their parents with the opportunity to address the allegations. *Id.* at 20-21, ¶ 109. Defendants were required by the handbook, District policy, and the law to report the incident to the District for investigation and to provide J.S. and C.G. with at least an informal hearing. *Id.* at 21, 23, 26, ¶¶ 112-113, 125, 141.

---

[3] C.G.'s punishment is alternatively described as a "school lunch detention." *Id.* at 26, ¶ 145. Plaintiffs also allege that C.G. would have faced a two-day out-of-school detention once the school obtained additional evidence regarding C.G.'s actions. *Id.*; Docket No. 43-5 at 2. C.G. apparently withdrew from Legacy before the school threatened this punishment, and he alleges only that he was deprived of the due process owed a student facing a detention-like punishment. *See* Docket No. 43-5 at 2.

3

Claim one is brought by Mr. Sanders alleging a breach of contract claim under Colorado law against Ms. Myers, Mr. Vruggink, and Legacy. *Id.* at 23-25. Claim two is brought by Mr. Blanscet alleging a breach of contract claim under Colorado law against Ms. Myers, Mr. Vruggink, and Legacy. *Id.* at 25-28. Claim three is brought by both Mr. Sanders and Mr. Blanscet alleging a violation of the Fourteenth Amendment's due process clause against Ms. Myers, Mr. Vruggink, and Legacy. *Id.* at 28-32.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). A court, however, does not need to accept conclusory allegations. *See, e.g., Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("we are not bound by conclusory allegations, unwarranted inferences, or legal conclusions.").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations

4

and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191 (quotations omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson*, 534 F.3d at 1286 (alterations omitted).

### III. ANALYSIS

First, the Court will address whether it will consider documents outside of the pleadings that the parties have submitted.  Second, the Court will address the breach-of-contract claims.  Third, the Court will address the procedural due process claims.

#### A. Documents Outside the Pleadings

Both parties request that the Court consider various documents outside the pleadings in ruling on the motion to dismiss.  The complaint references exhibits attached to the complaint, including the "Legacy Academy Parent & Student Handbook 2022/23" (the "handbook"), the District's "Title IX Grievance Process," the District's "Nondiscrimination/Equal Opportunity Complaint and Compliance Process," an affidavit of Ms. Thorn, and the discipline reports for J.S. and C.G.  Docket Nos. 43-1, 43-2, 43-3, 43-4, 43-5.  Defendants ask the Court to consider additional discipline reports, the District's "Sexual Harassment Under Title IX and Other Prohibited Misconduct of a Sexual Nature" policy, and a complaint filed by plaintiffs in state court.  Docket No. 49 at

5

4 (referencing Docket Nos. 49-1, 49-2, 49-3). Neither side appears to contest the other's references to these documents.

Generally, a court should not consider evidence beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019). If the court considers matters outside the complaint, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, the Tenth Circuit has recognized a "limited exception" to this rule: the "district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Waller*, 932 F.3d at 1282; *see also GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (recognizing that "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss"). However, a court has "broad discretion in determining whether or not to accept materials beyond the pleadings." *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998). When a court takes judicial notice of documents, it may do so only to "show their contents, not to prove the truth of the matters asserted therein." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

The Court will consider the documents attached to the complaint because it finds that plaintiffs have cited them extensively, Docket No. 41 at 4-11, 22-24, 26, making these documents "central" to plaintiffs' claims. *Waller*, 932 F.3d at 1282. The Court will not consider the discipline forms provided by defendants, Docket No. 49-1, because

6

defendants ask the Court to use the dates of discipline in the forms to infer that J.S. and C.G. had notice and the opportunity to be heard regarding the potential discipline. Docket No. 49 at 19.  The Court will also not consider the District policy and the state complaint submitted by defendants, Docket Nos. 49-2, 49-3, because the defendants seek to use those documents to attack the facts of plaintiffs' complaint. Docket No. 49 at 14, 16 (relying on the District policy; relying on the state complaint).

### B. Whether Legacy Academy is a Public School

An issue raised by the briefing is whether Legacy is a public school or a private one.  Plaintiffs state that Legacy is a charter school developed under the Charter School Act of 1993, Colo. Rev. Stat. § 22-30.5-101, Docket No. 41 at 4, ¶ 14, which means that, while Legacy controls its day-to-day operations, the school is part of the Elizabeth School District.  *Id.*  Save for a few exceptions not relevant here, Colorado law states that "a charter school has the same public status as a public school that is geographically located in the same school district."  Colo. Rev. Stat. § 22-30.5-104.9(2)(a).  The Court will thus treat Legacy as a public school for the purposes of this order.

### C. Breach of Contract Claims – All Defendants

Plaintiffs assert that the handbook sets forth a contractual agreement between Legacy, its students, the parents of the students, and the Legacy staff.  Docket No. 41 at 5, ¶ 20.  Plaintiffs allege that Legacy breached the contract by not following the proper procedures for investigating and disciplining J.S. and C.G.  *Id.* at 24, 27, ¶¶ 133, 149.  Defendants claim that what plaintiffs really allege are tort claims and that the Colorado Governmental Immunity Act (the "CGIA"), Colo. Rev. Stat. § 24-10-106(1), bars such a claim.  Docket No. 49 at 15-16.

7

### 1. Whether the CGIA Bars this Claim

The CGIA provides that a "public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant except as provided otherwise in this section." *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1003 (Colo. 2008) (quoting Colo. Rev. Stat. § 24-10-106(1)). The CGIA does not, however, apply to actions grounded in contract. *Id.* (citing *Berg v. State Bd. of Agric.*, 919 P.2d 254, 258 (Colo. 1996)). "[T]he form of the complaint is not determinative of the claim's basis in tort or contract . . . . Instead, a court must consider the nature of the injury and the relief sought." *Id.* (citations omitted). When the nature of the injury is obvious, however, the analysis of the relief becomes of little import. *Id.* at 1006 (declining to analyze the relief requested when the injury was clearly tortious).

Colorado courts have addressed the question of whether a claim grounded in contract is more accurately characterized as a tort claim. *Id.* at 1004 (citing *Berg*, 919 P.2d at 259; *Bd. of Cnty. Comm'rs. v. Delozier*, 917 P.2d 714, 716-17 (Colo. 1996)). In *Robinson*, the plaintiff sued the state lottery commission for selling lottery tickets advertising the chance to win a grand prize, even though the grand prize had already been claimed. *Id.* at 1005. The Colorado Supreme Court held that the CGIA barred the plaintiff's claim because it was ultimately based in tort, not contract, since it involved a misrepresentation of present facts. *Id.* In *Berg*, the plaintiff retiree had been assured by his former state-government employer that his health insurance coverage would remain the same regardless of which insurance plan he chose. *Berg*, 919 P.2d at 257. When it turned out that the plaintiff's new plan, unlike his old plan, did not cover his heart transplant, *id.* at 258, Berg sued under a contract-based theory of promissory estoppel.

8

*Id.* at 259.  The Colorado Supreme Court held that the CGIA did not bar the claim because the plaintiff had alleged a promise of future action that had not been kept.  *Id.*  Finally, in *DeLozier*, the plaintiff alleged a breach of contract and promissory estoppel where a county employer broke a promise that the plaintiff would be offered the next available job with the county's ambulance service.  *Delozier*, 917 P.2d at 715.  The Colorado Supreme Court held that this breach did not involve a misrepresentation of a present or past fact, but instead involved a promise for future performance, making the plaintiff's claim one grounded in contract and thus not barred by the CGIA.  *Id.* at 716-17.

Plaintiffs assert that J.S. and C.G. enrolled at Legacy with the understanding that both they and the school were bound by the policies contained in Legacy's student handbook.  Docket No. 41 at 23, 25, ¶¶ 123, 139.  Plaintiffs claim that these promises included a promise to follow District policy for investigating sexual harassment complaints.  *Id.* at 23, 26, ¶¶ 125, 141.  Plaintiffs allege that Legacy breached this promise in failing to follow the District policy for investigating the complaints against J.S. and C.G.  *Id.* at 24, 27, ¶¶ 133, 149.  The Court finds the situation of J.S. and C.G. similar to that of the plaintiffs in *Berg* and *DeLozier* in that they all relied on a promise of future conduct.  There is nothing in the pleadings to suggest that Legacy misrepresented to J.S. and C.G. at the time of enrollment its approach for sexual harassment investigations, making this unlike the tort-like misrepresentation at issue in *Robinson*.  The Court finds that plaintiffs have stated a claim grounded in contract and therefore that the CGIA does not bar this suit.

### 2. Whether Plaintiffs have Stated a Claim for Breach of Contract

Plaintiffs assert that the Legacy student handbook constitutes a contract, *id.* at 5, ¶ 20, and that defendants breached that contract by not following contractually-mandated procedures for handling sexual harassment matters. *Id.* at 23-27, ¶¶ 122-33, 138-49.

Defendants respond that a tuition-free public school's student handbook cannot constitute a contract. Docket No. 49 at 6-11. Defendants argue that the only Colorado case to hold that a school's promises of certain educational services or practices constituted a contract involved a private, post-secondary institution. *Id.* at 9-10 (citing *CenCor, Inc. v. Tolman*, 868 P.2d 396 (Colo. 1994)). Defendants note that in *Denver Parents Ass'n v. Denver Bd. of Educ.*, 10 P.3d 662, 664-65 (Colo. App. 2000), a state appellate court rejected extending the logic of *CenCor* to a public, K-12 school system. Defendants also cite cases from Indiana, Minnesota, New Hampshire, and Oklahoma applying those states' respective laws and reaching the same conclusion. Docket No. 49 at 11.

Plaintiffs cite *Univ. of Denver v. Doe*, 547 P.3d 1129 (Colo. 2024), and *CenCor*, as examples of cases where the Colorado Supreme Court found that a school's handbook-like materials could constitute a contract. Docket No. 55 at 4-5. Defendants respond that both of those cases involved private, post-secondary schools and are thus distinguishable. Docket No. 56 at 2-4.

*Univ. of Denver*, a case involving a private university, did not actually address whether the student handbook could constitute a contract. 547 P.3d at 1133 n.2. Rather, the parties stipulated beforehand that it could. *Id.* *CenCor*, meanwhile, involved claims that a private vocational school had induced students to enroll by

10

promising to provide training that would lead to professional certifications. 868 P.2d at 399-400. The school then failed to provide such training. *Id.* The court held that the failure to provide specifically promised educational services constituted an actionable contract claim. *Id.*

Defendants cite *Denver Parents Ass'n v. Denver Bd. of Educ.*, 10 P.3d 662, 664-65 (Colo. App. 2000), a case involving a breach of contract claim brought against a public K-12 school district. Docket No. 49 at 10-11. In *Denver Parents*, plaintiffs alleged that the city school system was woefully failing to provide an adequate educational environment. *Id.* at 664. The court distinguished these claims from those in *CenCor*, noting that the plaintiffs, as members of the general public sending their children to a public, tuition-free school, had not bargained with the school district for specific educational services nor paid for any such services. *Id.* at 665.

The holding in *Denver Parents*, that a student handbook does not constitute a contract between the school and the parents, is the same as that of cases from other jurisdictions addressing the question of whether a public school's student handbook can constitute a contract. *See Higginbottom ex rel. Davis v. Keithley*, 103 F. Supp. 2d 1075, 1080-81 (S.D. Ind. 1999) (applying Indiana law); *Achman v. Chisago Lakes Indep. Sch. Dist. No. 2144*, 45 F. Supp. 2d 664, 670 (D. Minn. 1999) (applying Minnesota law); *Borovac v. Churchill Cnty. Sch. Dist.*, 2012 WL 254131, at *3 (D. Nev. Jan. 27, 2012) (applying Nevada law); *Brodeur v. Claremont Sch. Dist.*, 626 F. Supp. 2d 195, 216-18 (D.N.H. 2009) (applying New Hampshire law); *Sutherlin v. Indep. Sch. Dist. No. 40 of Nowata Cnty.*, 960 F.Supp.2d 1254, 1268-69 (N.D. Okla. 2013) (applying Oklahoma law); *Kopp v. Sch. Dist. of Crivitz*, 905 N.W.2d 843, 2017 WL 4413020, at *6 (Wis. Ct.

App. 2017) (unpublished table decision) (applying Wisconsin law).  The Court finds this reasoning persuasive and concludes that plaintiffs' allegations fail to state a contract claim based on the student handbook.  The Court therefore will grant this portion of defendants' motion and dismiss the first and second claims against the defendants with prejudice.

### D.  Procedural Due Process Claims

Plaintiffs' procedural due process claim is brought pursuant to 42 U.S.C. § 1983.  Docket No. 41 at 28.  This claim alleges that Legacy violated J.S. and C.G.'s Fourteenth Amendment rights by failing to provide them with certain procedural protections before imposing discipline.  Docket No. 41 at 28-32, ¶¶ 153-166.  Defendants argue that this claim fails as to Ms. Myers and Mr. Vruggink because, among other reasons, the relevant portions of the complaint do not specifically mention them.  Docket No. 49 at 17 n.5.

"Without allegations sufficient to make clear the grounds on which the plaintiff is entitled to relief, it would be impossible for the court to perform its function of determining, at an early stage in the litigation, whether the asserted claim is clearly established."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008) (holding that a claim should be dismissed at the Rule 12(b)(6) stage based on the plaintiffs' failure to identify individual defendants in the complaint).  In a case brought under Section 1983, "it is particularly important . . . that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations."  *Id.* at 1250.

In those portions of the complaint that allege facts relevant to plaintiffs' due process claims, Docket No. 41 at 28-32, ¶¶ 153-66, plaintiffs do not mention either Ms.

12

Myers or Mr. Vruggink.  The rest of the allegations, except for a single reference to "Defendants," *id.* at 32, ¶ 164, mention only Legacy.  *See id.* at 28-32, ¶¶ 153-156.  The general allegations of the complaint do not allege that Ms. Myers or Mr. Vruggink imposed the suspension or the detention on J.S. or C.G.  Plaintiffs do allege that "Defendants (at the direction of the school board members) disciplined J.S. and C.G. in retaliation for J.S. and C.G. reporting A.H.'s violation of Legacy's dress code policy, the Indecent Exposure and the Hair Incident."  *Id.* at 21, ¶ 110.  But it is not clear whether this allegation refers to the imposition of the suspension and the detention or if it refers to Ms. Myers' and Mr. Vruggink's interviews of J.S. and C.G. in their offices.  *Id.* at 13-15, ¶¶ 56-75.

Plaintiffs have the burden to "provide fair notice of the grounds for the claims made against each of the defendants."  *Robbins*, 519 F.3d at 1250.  Without such notice, Ms. Myers and Mr. Vruggink are unable to "ascertain what particular unconstitutional acts they are alleged to have committed."  *Id.*  Given plaintiffs' failure to allege the role that Ms. Myers or Mr. Vruggink played in depriving J.S. and C.G. of their due process rights, the Court will dismiss the claims against both of these defendants without prejudice.

The Court will next consider plaintiffs' due process claim against Legacy.  Local governments may not be sued under 42 U.S.C. § 1983 on a theory of respondeat superior.  *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 692 (1978).  Instead, local governing bodies can be sued directly only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Id.* at 690.  "[I]t is

13

when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. These principles of municipal liability apply to public charter schools in Colorado like Legacy. *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188 (10th Cir. 2010) (applying Colorado law).

A "policy or custom" for *Monell* liability can be pled in one of four ways.[4] The first option requires allegations of a formal regulation or policy statement that violated a plaintiff's rights. *Id.* The second option requires an assertion that there was an informal custom that violated the plaintiff's rights. *Id.* For this second approach, the plaintiff must allege that the "custom amounts to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Id.* (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (internal quotations omitted)). The third option requires allegations that a rights-violating decision constituted a policy because it was made by an employee with final policymaking authority. *Id.* The fourth option requires allegations that final policymakers ratified the decision – and the basis for it – of a rights-violating decision made by a subordinate employee to whom authority had been delegated. *Id.*

Under any of these approaches, a plaintiff must first allege that a municipal employee violated the plaintiff's constitutional rights. *See Jiron v. Lakewood*, 392 F.3d

---

[4] Nothing in the amended complaint suggests that a fifth form of a *Monell* "policy or custom" – failure to adequately train or supervise employees – is at issue in this case.

410, 419 (10th Cir. 2004). The Court has already found that the complaint does not adequately allege that either Ms. Myers or Mr. Vruggink violated the due process rights of J.S. and C.G. The next question is whether the complaint can be fairly read to allege that some other Legacy employee, acting on behalf of Legacy, violated their due process rights. The complaint refers to Legacy or the "Defendants" violating J.S.'s and C.G.'s due process rights, not another employee. Since the complaint does not allege a constitutional violation by a municipal employee, the Court will dismiss this claim against Legacy Academy without prejudice.

## IV. CONCLUSION

It is therefore

**ORDERED** that the Motion to Dismiss Plaintiffs' First Amended Complaint [Docket No. 49] is **GRANTED in part and DENIED in part**. It is

**ORDERED** that the first claim, brought by Jonathan Sanders against all defendants, is **DISMISSED with prejudice**. It is further

**ORDERED** that the second claim, brought by Shell Blanscet against all defendants, is **DISMISSED with prejudice**. It is further

**ORDERED** that the third claim, brought by Jonathan Sanders and Shell Blanscet against all defendants, is **DISMISSED without prejudice**. It is further

**ORDERED** that this case is closed.

DATED March 28, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge